UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | } | |
|---|---|---|
| *Plaintiff,* | } | No. 14 cr 151 |
| *vs.* | } | Judge Lee |
| TYREE CRAIG, | } | |
| *Defendant.* | } | |

**Defendant's Sentencing Memorandum**

Defendant Tyree Craig, by his attorney Eugene O'Malley, submits this sentencing memorandum, including his objections to the PSR (#99), pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Local Rule LCr 32.1 of the Northen District of Illinois.

**Posture of the Case**

This case is before the court for sentencing pursuant to defendant's plea of guilty.

Tyree Craig is one of two defendants originally charged by indictment (#19) with conspiracy to obstruct interstate commerce by robbery in violation of 18 USC §1951(a), multiple counts of obstruction of interstate commerce by robbery in violation of 18 USC §1951(a), and two counts of brandishing a firearm in relation to a crime of violence, in violation of 18 USC §924(c)(1)(A). Co-defendant Jacobi Pickett was also charged with being a felon in possession of a firearm, in violation of 18 USC §922(g)(1).

On July 23, 2015, after the parties notified the court that a plea agreement had been reached, the government filed a three-count superseding information charging Craig with one count of obstruction of commerce by robbery in violation of 18 USC §1951(a), one count

-1-

of attempted obstruction of commerce by robbery, in violation of 18 USC §1951(a), and one count of brandishing a firearm in relation to a crime of violence, in violation of 18 USC §924(c)(1)(A) and 2. (##88, 91)

Craig entered a plea of guilty to the superseding information pursuant to a written plea agreement. (##90, 91, 97, 98).

## The Plea Agreement

In his Plea Agreement, Craig admitted a factual basis to all three counts of conviction and also stipulated to seven instances of what he conceded to be relevant conduct.

The plea agreement calculates the applicable guideline offense levels as follows:

**Count 1** (obstruction of commerce by robbery):

| | |
|---|---:|
| Base offense level, USSG §2B3.1 | 20 |
| Dangerous weapon brandished, USSG 2B3.1(b)(2)(E) | 3 |
| **Offense level** | **23** |

**Count 2** (attempted obstruction of commerce by robbery)

| | |
|---|---:|
| Base offense level, USSG §2B3.1 | 20 |
| Dangerous weapon, USSG 2B3.1(b)(2) inapplicable, USSG §2K2.4 | 0 |
| **Offense level** | **20** |

**Count 3** (firearm in relation to crime of violence)

Statutory 7-year minimum, 18 USC §924(c)(1)(A)(ii)

**Stipulated Offenses** (for each of the seven stipulated offenses of robbery)

| | |
|---|---:|
| Base offense level, USSG §2B3.1 | 20 |
| Dangerous weapon brandished, USSG 2B3.1(b)(2)(E) | 3 |
| **Offense level** | **23** |

The Plea Agreement included provisions as to Grouping and Combined Offense Level which added an additional 5 points. It contained a stipulation that Craig is entitled to 3-point reductions for Acceptance of Responsibility and Timely Notice of Guilty Plea. It was stipulated that Craig has 15 criminal history points, which places him in Criminal History Category VI. According to the Plea Agreement, the combined adjusted offense level in this case, therefore, is 25. The advisory guideline range for offense level 25, criminal history category VI is 110-137 months.

The government and the defendant disagree as to whether Craig is subject to treatment as a Career Offender under USSG §4B1.1(a). It is the government's position that Career Offender status applies, and that the applicable advisory sentencing range under the guidelines is 262-327 months. It is defendant's position that the correct offense level is 25 and defendant's criminal history category is VI, calling for an advisory guideline sentencing range of 110-137 months. The parties both recognize that defendant is also subject to a statutory seven-year minimum sentence which must be consecutive to any other sentence imposed.

**Standard**

Since *Booker v. United States*, 543 U.S. 220 (2005), the sentencing guidelines have been advisory, rather than mandatory. *United States v. Demaree*, 459 F.3d. 791 (7th Cir. 2006) (overruled on other grounds in *Peugh v. United States*, 133 S.Ct. 2072 (2013)). A district court now follows two steps in determining what sentence is appropriate. The court must first calculate the proper advisory guidelines range and then, having done so, it must decide whether to impose a sentence within that range or outside it by reference to the factors set forth in 18 U.S.C § 3553(a). *United States v. Robinson*, 435 F. 3d 699, 700-701

(7th Cir. 2006). The second step requires the court to give meaningful consideration to the § 3553(a) factors and the sentencing arguments raised by the defendant; and to state the factors on which the sentence is based. *United States v. Pennington*, 667 F.3d 953, 956 (7th Cir. 2012)

The primary directive of 18 U.S.C. § 3553(a) is to impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes of sentencing. *United States v. Cunningham*, 429 F.3d 673, 675-679 (7th Cir. 2005) The district court may conclude that:

> the guideline sentence is not appropriate, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the heartland to which the Commission intends individual Guidelines to apply, USSG 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence. *United States v. Rita*, 551 U.S. 338, 351 (2007).

In § 3553(a) Congress set out what it held to be the basic objectives of sentencing and directed the sentencing court to "impose a sentence sufficient, but not greater than necessary" to

- reflect the seriousness of the offense, promote respect for the law, and provide just punishment;
- afford adequate deterrence to criminal conduct;
- protect the public from further crimes of the defendant;
- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, the court is also required to consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences

available; the kinds of sentence and the sentencing range established by the applicable guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and any need to provide restitution. 18 U.S.C. § 3553(a), *Rita*, 551 U.S. at 347-348.

## Factual Corrections and Additions to the Pre-Sentencing Report

A sentencing court may accept any undisputed portion of the presentence report as a finding of fact but must, for any disputed portion of the presentence report or other controverted matter, rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing. Fed. R. Crim. Pro., Rule 32(I)(3).

The Plea Agreement and the PSR differ in their calculation of defendant's criminal history points. The Plea Agreement assigns defendant 15 points, while the PSR assigns 17 points. Because either calculation leads to the same result, a criminal history category of VI, the difference will not affect sentencing and a ruling is unnecessary.

## Objections to the Guideline Calculation of the PSR

Defendant has the following objections to the PSR:

1. Contrary to the plea agreement, the PSR recommends a 5-point enhancement to the base offense level for Count 1, and for each of the stipulated offenses, on the grounds that defendant brandished a firearm in connection with those offenses. In the plea agreement, on the contrary, the parties agreed that the appropriate enhancement is 3 points for brandishing a "dangerous weapon." Defendant submits that the Plea Agreement is correct and the PSR mistaken, and that offense level is 23, not 25.

-5-

2. The PSR's erroneous choice of the firearm enhancement instead of the dangerous weapon enhancement led it to miscalculate the combined adjusted offense level as 30, rather than 28 as provided in the Plea Agreement.

3. The PSR agrees with the government that defendant is subject to treatment as a Career Offender under USSG §4B1.1. Defendant disagrees.

**Objection to Guideline Enhancement for Brandishing a Firearm**

The Plea Agreement stipulates that the base offense level for Count 1 is subject to a 3-level enhancement pursuant to USSG §2B3.1(b)(2)(E) because a dangerous weapon was brandished during the robbery. The Plea Agreement applies a similar 3-level dangerous weapon enhancement to each of the seven additional stipulated offenses. No enhancement applies to Count 2 under the Plea Agreement pursuant to USSG §2K2.4 because that count is subject to a mandatory statutory consecutive sentence under 18 USC §924(c). Similarly, no enhancement, and indeed no guideline sentence at all, apply to Count 3 because the sentence for that count is statutory. *See* USSG §2K2.4

The PSR, contrary to the Plea Agreement, submits that Count 1 and Stipulated Offenses 1-6 are subject to a 5-level enhancement pursuant to USSG §2B3.1(b)(2)(C) because a firearm, rather than a dangerous weapon, was brandished.

The Plea Agreement "dangerous weapon" enhancement is based upon the government's recognition that uncertainty exists whether the weapon brandished during the Count 1 robbery and Stipulated Offenses 1-7 was a firearm for purposes of 18 USC §924 or not. As the government recites in its version of the offense,

> Ordinarily, the government would seek a five-level enhancement under Guideline §2B3.2(b)(3)(iii) for Count 1 and the Stipulated Offenses. In this instance, however, in addition to the recovered Hi-Point .40 caliber Smith &

> Wesson that forms the basis of Count 3, the government recovered a BB gun from among Craig's effects on East 76th Street, which Craig maintains he brandished during some robberies. Guidelines §1B1.1 provides that a BB gun is a dangerous weapon but is not a firearm. As such, the government's position is that a three level enhancement is appropriate under Guideline §2B3.1(b)(2)(E), because a dangerous weapon was brandished.

The contrary view of the PSR is based on the statement of co-defendant Pickett in his plea agreement that "actual firearms were brandished during the robberies in which he participated with the defendant" and on the probation officer's unexplained "assessment" "that the defendant is accountable for the conduct of Pickett as it was at least implicitly agreed upon as well as reasonably foreseeable to the defendant." (PSR ¶ 30)

The assessment of the probation office cannot overcome the government's well-taken acknowledgment that the evidence is insufficient to support the more severe enhancement. In a prosecution under 18 USC §924 the government carries the burden to prove beyond a reasonable doubt the very existence of a firearm as defined by statute, meaning "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. 18 USC § 921(a)(3). *See United States v. Buggs*, 904 F.2d 1070, 1074-1075 (7th Cir. 1990). This statute does not require that the firearm be loaded, or even that it be operable. It is enough that it was designed to fire. *Buggs*, 904 F.2d at 1075) But by the same token "a toy or replica will not do." *United States v. Kirvan*, 997 F.2d 963 (9th Cir. 1993), *United States v. Westerdahl*, 945 F.2d 1083, 1088, (9th Cir. 1991). A BB gun is clearly not a firearm within the meaning of the statute, and the government has properly declined to ask for an enhancement which could be supported only by speculation. It is the government's burden to prove the existence of an actual firearm as defined by law. *United States v. Moore*, 25 F.3d 563, 566 (7th Cir. 1994), *United States v. Taylor*, 54 F.3d 967, 975

(1st Cir. 1995), *United States v. Kirvan*, 997 F.2d 963 (9th Cir. 1993). Neither the probation office nor this court should second-guess the decision of the responsible prosecutor that adequate and trustworthy support for the 5-point firearm enhancement is lacking.

Obviously the government does not have sufficient confidence in the statements of co-defendant Pickett to rely on them to seek a firearms enhancement against Craig, nor does the PSR identify any evidentiary basis for its assertions that the alleged use of an actual firearm was either "at least implicitly agreed upon" with Craig or "reasonably foreseeable" to him. In order for the firearm enhancement to apply, the district court must make an individualized finding that the a co-conspirator's actual firearm possession was reasonably foreseeable to the defendant. *United States v. Ramirez*, 783 F.3d 687, 690 (7th Cir. 2015), *United States v. Luster*, 480 F.3d 551, 558 (7th Cir. 2007). The mere fact that the defendant was a co-participant in the crime does not make him strictly liable for the weapons possessed by other participants. Rather the sentencing judge is required to undertake an individualized inquiry about the foreseeability of a co-defendant's gun possession from the perspective of the defendant. *Ramirez*, 783 F.3d at 691, *United States v. Vold*, 66 F.3d 915, 921 (7th Cir. 1995). And "common-sense" inferences about foreseeability must have adequate support in the record. *Ramirez*, 783 F.3d at 691, *United States v. Block*, 705 F.3d 755, 764 (7th Cir. 2013).

While courts have frequently observed that firearms are a ubiquitous aspect of the drug world, *Ramirez*, 783 F.3d at 691-692, where dealers and traffickers must protect large sums of money and valuable narcotics without invoking the aid of the police, it is equally true that many a robbery has been committed with an air-gun, a BB gun, a replica gun, or even a pointed finger in a jacket pocket, none of which qualifies as a firearm for purposes

of the guideline enhancements. In this case the government and the defendant were both of the view that the ambiguity of the evidence warranted application only of the less serious "dangerous weapon" enhancement.

The position of the Plea Agreement is correct. The 3-level dangerous weapon enhancement applies to this case. The 5-level firearm enhancement does not.

## Objection to the Combined Offense Level

Because, as explained in the previous objection, the PSR erroneously applied the 5-point firearm enhancement instead of the 3-point dangerous weapon enhancement, it miscalculated the multiple count adjustment on the basis of an adjusted offense level of 25 rather than the correct level of 23. The PSR therefore arrived at a combined adjusted offense level of 30. (PSR, ¶¶ 84-87.) The correct combined adjusted offense level is 28, as set out in the Plea Agreement.

## Objection to Career Offender Status

The Plea Agreement acknowledges a difference of opinion between the defendant and the government as to whether Tyree Craig is subject to sentencing as a Career Offender under USSG §4B1.1. The PSR agrees with the government that Career Offender status and sentencing are warranted. (PSR ¶¶ 88-89)

USSG §4B1.1(a) provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG §4B1.2(a) defines a "crime of violence" for purposes of §4B1.1:

-9-

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Application note 1 to §4B1.2 states in part that:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

The guideline language closely tracks the language of the Armed Career Criminal Act, 18 USC §924(e)(2)(B).

It is the government's position, as set out in the Plea Agreement, that Craig is a career offender on the basis of one prior conviction for a controlled substance offense and one prior conviction for a crime of violence. The PSR agrees with the government. (PSR, ¶¶88-89) Craig concedes that his prior conviction for distribution of a controlled substance constitutes one qualifying career offender predicate, but he disputes the assertion of the government and the PSR that his Illinois state conviction for resisting or obstructing a peace officer with injury constitutes a predicate crime of violence.

Craig's Illinois "resisting or obstructing" conviction does not meet the definitions of either governing guideline provision. Guideline § 4B1.2(a)(1) does not apply because the use, threatened use or attempted use of physical force is not an element of the offense of

conviction. Guideline § 4B1.2(a)(2) does not apply because the offense of conviction is not one of the specifically enumerated offenses of burglary of a dwelling, arson, extortion or an offense involving explosives; while the residual clause extending the definition of a crime of violence to an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" was held unconstitutional and void for vagueness and overbreadth in *Johnson v. United States*, ____ U.S. ____ , 135 S.Ct. 2561 (June 26, 2015).

Tyree Craig's "resisting or obstructing" offense is not a crime of violence under § 4B1.2(a)(1) because physical force is not an element of the offense. The 2005 Illinois statute under which Craig was convicted provided, in relevant part:

> 720 ILCS 5/31-1. Resisting or obstructing a peace officer or correctional institution employee.
>
> (a)    A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor. . . .
>
> (a-7)   A person convicted for violation of this Section whose violation was the proximate cause of an injury to a peace officer is guilty of a Class 4 felony.

A conviction for violation of Section a-7 requires proof of the elements that the defendant (1) knowingly (2) resists or obstructs the performance (3) by one known to the defendant to be a peace officer of (4) an authorized act within the official capacity of the officer (5) where the defendant's violation of those elements is the proximate cause of (6) injury to a peace officer. Although a person may, under Illinois law, commit obstruction of a peace officer by means of a physical act, this type of conduct is nether an essential element nor the exclusive means of committing an obstruction. *People v. Baskerville*, 2012 IL 111056, ¶23 (ILSCt 2012). The legislative focus of Section 31-1(a) is on the tendency of the conduct to

-11-

interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties. *Id.* The offense may be committed by failure to obey an officer's command or by providing an officer with false information. *Id.* And see *People v. Smith*, 2013 IL App (3d) 110477 (conviction under Section 31-1 upheld where criminal complaint charged that defendant "exited his vehicle during a traffic stop and refused to return to the vehicle.") In *Baskerville* the Illinois Supreme Court quoted with approval the observation of an ALR annotation that "[t]he offense of obstructing or interfering with an officer in the performance of a duty may be committed without any physical obstruction or interference, or without force or violence." *Baskerville*, ¶22. Even under § 31-1(a-7) which applies where the defendant's violation "was the proximate cause of an injury to a peace officer," the use of physical force against the person of another is not an element. Guideline § 4B1.2(a)(1) does not apply. *See Begay, Chambers*.

The specific offense clause of § 4B1.2(a)(2) obviously does not apply. It is not suggested that Craig's conviction is for burglary of a dwelling, arson, extortion, or involves use of explosives.

Until recently a court might have gone on to ask whether Craig could still be a career offender under the residual clause of § 4B1.2(a)(2) which includes within the definition of a crime of violence an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See e.g. United States v. Woods,* 576 F.3d 400, 403 (7th Cir.2009), *United States v. Taylor*, 630 F.3d 629, 633 (7th Cir.2010). But that road is now closed. In *Johnson v. United States*, ___ U.S. ___ , 135 U.S. 2561 (2015), the Supreme Court, examining the identical language of 18 U.S.C. § 924(e)(2)(B), held that the residual clause is unconstitutionally vague and overbroad, and is therefore void as for denial

of due process of law. Because Craig's conviction is not yet final, the *Johnson* decision controls this case. *Griffith v. Kentucky*, 479 U.S. 314 (1987).

Application of the career offender guideline, U.S.S.G. § 4B1.1, requires at least two qualifying predicate convictions. Craig concededly has one such predicate conviction in his prior controlled substance case. But his Illinois conviction for obstructing or resisting a peace officer does not meet the definitions of a crime of violence under either the "elements" provision of § 4B1.2(a)(1) or the "specific offenses" clause of § 4B1.2(a)(2). Whether the statute under which he was convicted might have satisfied the "residual clause" of § 4B1.2(a)(2) is no longer an issue, for that clause is now recognized as constitutionally invalid. *Johnson*.

Tyree Craig is not subject to sentencing as a career offender.

## Section 3553(a) Sentencing Factors

18 U.S.C. 3553(a)(6) requires the sentencing court to take into consideration "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Prior to *Gall v. United States*, 552 U.S. 38 (2007), it was the law in the Seventh Circuit that this requirement addressed only "an unjustified difference across judges (or districts) rather than among defendants to a single case." *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) *Gall* has rendered that view untenable, for it is now clear that both 18 U.S.C. §§ 3553(a)(6) and 3553(a)(2) entitle sentencing judges to consider disparities between co-defendants.

The seventh circuit so ruled in *United States v. Bartlett*, 567 F.3d 901, 908-909 (7th Cir. 2009) and *United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009). Indeed, in *Statham* it held that its previous view as expressed in *United States v. Wood*, 556 F.3d 616,

623 (7th Cir. 2009), and *United States v. Omole*, 523 F.3d 691, 700-701 (7th Cir. 2008) "is now foreclosed by *Gall*." *Statham*, 581 F.3d at 556.

It is appropriate, therefore, for this court, in determining the sentence to be imposed upon Tyree Craig, to consider the sentence imposed upon his co-defendant Jacobi Pickett. Both defendants are subject to a mandatory sentence of 84 months imprisonment on the firearm count. Jacobi Pickett received a sentence of forty-six months imprisonment on the count of obstruction of commerce by robbery. The government is recommending that Tyree Craig be sentenced to a low-end guideline sentence of 262 months for the same offense. The probation office, recognizing that the maximum sentence provided for that count is 240 months, has proposed that Craig receive the statutory maximum. The sentences proposed for Craig on the obstruction through robbery count are between five and six times the sentences which co-defendant Pickett received for the same count.[1]

Obviously, there are differences as well as similarities between Pickett and Craig. Both defendants pled guilty to the same counts. Both were involved in multiple armed robberies, and often participated in the very same offense. On the other hand, they differ in age, in prior criminal history, and in personal background. Some of these differences in comparison are aggravating as to Craig while others are mitigating. But the differences are not such as to justify the enormous disparity between the sentence imposed upon Jacobi Pickett and the sentences proposed by the government and the PSR for Tyree Craig.

Jacobi Pickett was nineteen years old at the time of the offenses of conviction, while Craig was thirty. Pickett was, while no longer a child, still a young enough man to be

---

[1] Addition of the consecutive 84-month firearm sentence would result in an aggregate sentence for Craig of 324 or 346 months.

entitled to some reasonable consideration on account of his youth. Craig, a man of fully adult years, is not. But while youth is a mitigating factor as to Pickett, Pickett's youth is not an aggravating factor as to Craig. Craig may not get a break because of his age, but neither is he to be punished for it. The age difference between the two no doubt justifies some disparity, but not much.

Despite the difference in age, there is no suggestion that Craig led or lured Pickett into crime. Neither the government nor the PSR has suggested that Craig was a leader or organizer with the respect to Pickett, or that he recruited Pickett into criminal activity. Pickett's own sentencing memorandum concedes that he was involved in a robbery with weapons, and served time for it in an Illinois state prison, prior to any association with Tyree Craig. As to the offenses in this case, Pickett does not claim that Craig induced or recruited him. On the contrary, Pickett admits that under pressure to provide financially for his new family, "Tyree Craig's presence offered an easy solution. Jacobi would act as a driver and Craig and others would commit the robberies." (Pickett Sentencing Memorandum, #60, pp. 4-5) Pickett never denies that he linked up with his cousin Craig of his own free will to make money by robbery. If Craig had induced him to do so, it would have been in his interest to say so. He does not.

Pickett, despite his Illinois robbery conviction, had a level I Criminal History Category. Craig, regardless whether this court finds him to be a Career Offender or not, is at Criminal History Category VI. Obviously this significant difference by itself warrants a sentence for Craig more severe than that imposed on Pickett. But it does not warrant the degree of disparity proposed by the government and the PSR.

Finally, even the government concedes that "[s]everal aspects of Craig's personal

history and characteristics are mitigating. . . . He was raised primarily by his grandmother and not by his parents, which contributed to a difficult childhood. The PSR recounts a challenging upbringing . . ." (Government's Position Paper, #110, p 6) Pickett, in contrast, appears to have been blessed with the stable upbringing that Craig never knew. (#60, pp. 3-5) While this court certainly would not, and did not, punish Pickett more severely for his supportive and stable background, it can and should recognize that Craig's life was far harder and that it was more difficult for him to escape criminality.

The court should also note the numerous letters that family members, friends and neighbors have submitted in defendant's support. (See appendix of Sentencing Exhibits). One thing is vividly clear from these letters. Tyree Craig enjoys the love of his family and, most notably, of his children. He may have a history of trouble with the law, but at home he is a good, dedicated, active and beloved father to his children. He recognizes his own shortcomings and has tried to better them as evidenced by his successful participation in drug and anger management programs while incarcerated, his successful completion of a Chicago Transit Authority apprentice program, and his activity with the Bryn Mawr Community Church. He has a long and stable work history as a fork lit operator. His family, neighbors and friends have neither denied nor ignored the conduct that brings him before the court, but they point to another side of his character.

The court must now impose sentence on the second of two co-defendants who pled guilty to essentially the same crimes. While Craig can point to mitigating factors in his early history that his co-defendant does not share, he does not expect to receive the same sentence meted out to Pickett, a younger man with a cleaner record. He does submit, however, that the enormous disparity between the robbery sentences proposed for him by

the government and the PSR are grossly disproportionate to the 46 month sentence imposed upon Jacobi Pickett.

Tyree Craig submits that the proper sentence in this case is one substantially below the guideline level and reasonably, but not excessively or disproportionately, more severe than the below-guideline sentence that his co-defendant has already received. He is aware that in addition to his guideline sentence on the robbery charges he will be subject to a mandatory 84 month consecutive sentence on the firearm charge.

**Conclusion**

Tyree Craig respectfully asks this court to reject the proposed 5-level enhancement for brandishing a firearm in favor of the 3-level enhancement for brandishing a dangerous weapon as set out in the plea agreement; to reject career offender status; to correct his criminal history points; and to impose a sentence below the applicable advisory guideline level giving consideration to all appropriate factors including the sentence imposed in the case of co-defendant Jacobi Pickett.

Respectfully submitted,

s/Eugene O'Malley

Eugene O'Malley
5357 W. Devon Ave.
Chicago IL 60646
312 543-6557

*Attorney for Defendant*

## Certificate of Service

I, Eugene O'Malley, attorney of record, certify that on February 5, 2016, I served the foregoing memorandum upon all counsel by the electronic filing system of the district court.

s/Eugene O'Malley