UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 14 CR 151 |
| vs. | |
| TYREE CRAIG | Judge John Z. Lee |

**RESPONSE TO DEFENDANT TYREE CRAIG'S
MOTION FOR REDUCED SENTENCE**

On January 19, 2021, defendant Tyree Craig filed a Motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). R. 173. As explained below, the Court should deny defendant's motion because his claim fails on the merits.

## BACKGROUND

On April 23, 2014, defendant and others were charged in an indictment with multiple violations of the Hobbs Act, see 18 U.S.C. § 1951(a), and with using, carrying, and brandishing a firearm during and in relation to a crime of violence, see 18 U.S.C. § 924(c). R. 19.

On July 23, 2015, defendant alone was charged in a superseding information. R. 88. Count One charged him with, on or about October 21, 2013, obstructing, delaying, and affecting commerce by robbery, by unlawfully taking and obtaining United States currency and cigarettes from a gas station employee against the employee's will, by means of actual and threatened force and fear of injury, in violation of 18 U.S.C. § 1951(a). R. 88 at 1. Count Two contained substantially

1

similar allegations, with respect to a robbery of a jewelry store on January 10, 2014, including the attempt to take and obtain jewelry from a person against the person's will, by means of actual and threatened force and fear of injury. *Id.* at 2. Count Three alleged that defendant used, carried, and brandished a weapon during and in relation to a crime of violence, namely, the January 10, 2014 attempted robbery of the jewelry store, in violation of 18 U.S.C. § 924(c). R. 88 at 3.

On August 10, 2015, defendant pled guilty to all three counts of the superseding information, pursuant to a plea agreement in which he stipulated to the commission of seven additional armed robberies. R. 97, 98. After careful consideration of the factors set forth at 18 U.S.C. § 3553(a), this Court imposed a sentence of 110 months as to Counts One and Two, to run concurrently, and imposed the statutory mandatory minimum sentence of 84 months' imprisonment as to Count Three, to run consecutively, and 5 years of supervised release. R. 147.

Defendant timely appealed his conviction to the Seventh Circuit Court of Appeals. The appeal raised only the issue of whether a violation of the Hobbs Act was a crime of violence for purposes of the mandatory consecutive sentence under § 924(c). The Court of Appeals relied on its decision in *United States v. Anglin*, 846 F.3d 954 (7th Cir. 2017), and held that it was a crime of violence under the elements clause of § 924(c). The conviction was therefore affirmed. R. 164.

Defendant also filed a *pro se* habeas petition pursuant to Title 18 United States Code Section 2255. *See* 18 CV 3883, R. 1. The Court denied the petition,

concluding that defendant's contention that his conviction for Hobbs Act robbery was not a valid predicate for his conviction under 18 U.S.C. § 924(c) was foreclosed by settled circuit precedent. 18 CV 3883, R. 11. Defendant appealed and the Seventh Circuit found no substantial showing of the denial of a constitutional right, and denied a request for a certificate of appealability. 18 CV 3883, R. 21.

***The BOP's Response to COVID-19***

As reported on the BOP's website, in January 2020, the BOP began a course of action to respond to the spread of COVID-19.[1] Phase One of this course of action included the creation of an agency task force working in conjunction with subject matter experts from the Center for Disease Control and Prevention ("CDC") and the World Health Organization to review guidance about best practices to mitigate transmission. *Id*. On March 13, 2020, as part of Phase Two of the course of action, the BOP began implementing various measures to mitigate the spread of the virus. These measures included suspending social visits, in-person legal visits, all inmate movement, and staff travel. The BOP also began implementing procedures to quarantine and screen inmates and staff for the virus, which included screening all newly arriving inmates for exposure risk factors and symptoms, quarantining asymptomatic inmates with exposure risk factors, and isolating and testing symptomatic inmates with exposure risk factors. *Id*.

---

[1] Federal Bureau of Prisons COVID-19 Action Plan, March 13, 2020, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited on May 11, 2020).

Subsequent phases of the BOP's response included the authorization of inmate movement in order to avoid overcrowding at BOP facilities. However, such movements were limited to inmates who had been in custody for more than fourteen days and who had been subjected to exit screening to ensure that the prisoner had no COVID-19 symptoms (fever, cough, shortness of breath) and a temperature less than 100.4 F. Subsequent phases of the course of action included the quarantine and isolation of all new inmates with asymptomatic inmates being quarantined for fourteen days and symptomatic inmates being isolated until testing negative for COVID-19, modifying operations to maximize social distancing, the maximization of telework for staff members, and conducting inventory reviews of all cleaning and medical supplies to ensure ample supplies were on hand and ready to be distributed as necessary at BOP facilities.[2] Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

**ARGUMENT**

**I. Legal Standard**

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

---

[2] Bureau of Prisons Update on COVID-19, March 24, 2020, https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (last visited on May 8, 2020); COVID-19 Action Plan: Phase Five, March 31 2020, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited May 11, 2020).

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i)   extraordinary and compelling reasons warrant such a reduction; or
>
>   (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.*

Under this statute, a sentence reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). In addition to finding "extraordinary and compelling" reasons for the reduction, the Court must also find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" per U.S.S.G. § 1B1.13(2). Finally, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant. *Id.*

5

Congress directed that the Sentencing Commission issue policy statements defining the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3852(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Pursuant to this directive, § 1B1.13 of the Sentencing Guidelines Manual sets forth the Commission's policy statement relating to § 3582(c). Guideline § 1B1.13 provides that under § 3852(c)(1)(A), a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community"; and (3) "the reduction is consistent with this policy statement." Application Note 1 to Guideline § 1B1.13 identifies factors that may constitute "extraordinary and compelling reasons" for a sentence reduction, including a defendant's medical condition, age, family circumstances, and an open-ended category for "other reasons."

Thus, in order to obtain relief under § 3582(c)(1)(A)(i), the defendant must show that:

    (1)    he has requested relief from the BOP and exhausted any administrative appeals in that process;

(2) there exist extraordinary and compelling reasons that warrant a sentence reduction;

(3) the requested reduction is consistent with the policy statements issued by the sentencing commission in Guideline §1B1.13, including the requirement that "the defendant is not a danger to the safety of any other person or to the community"; and

(4) the reduction is warranted in light of the factors listed in 18 U.S.C. § 3553.

## II. Exhaustion of Administrative Remedies

In his brief, defendant represents that he has exhausted his administrative remedies because he made a request for compassionate release to the warden at FCI Manchester and the request was denied on November 25, 2020. The government also has separately inquired with BOP representatives to determine whether defendant had done so, and has confirmed that the request for relief was made and denied. *See* Exhibit A. As noted in the denial, defendant presents with only one CDC risk factor for COVID-19—a history of smoking—but otherwise does not meet BOP's criteria for release. *See* Ex. A at 2.

For the reasons explained below, defendant's request should be denied on the merits because defendant has failed to establish that release is warranted. The instant offense of conviction is for a violent crime that included the use of a firearm.

## III. Defendant has not established extraordinary and compelling reasons warranting release.

As pertinent here, defendant is not at least 70 years old and has not served at least 30 years in prison; thus, he is ineligible to seek compassionate release under

7

§ 3852(c)(1)(A)(ii). Instead, he is only eligible to seek release on the grounds that, "after considering the factors set forth in section 3553(a)…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Congress directed that the Sentencing Commission issue policy statements defining the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3852(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Promulgated pursuant to the statutory mandate, Guideline § 1B1.13 provides that under § 3852(c)(1)(A), a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community"; and (3) "the reduction is consistent with this policy statement." Application Note 1 to Guideline § 1B1.13 identifies factors that may constitute "extraordinary and compelling reasons" for a sentence reduction, including a defendant's medical condition, age, family circumstances, and

an open-ended category for "other reasons." In addition, any reduction must be supported by "the factors set forth in [18 U.S.C. §] 3553(a)." USSG §1B1.13. *See also, e.g., United States v. Willis*, 2019 WL 2403192, at *2 (D.N.M. June 7, 2019); *see also United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).

With respect to applicable policy statements, before the passage of the First Step Act, the Sentencing Commission concluded that "extraordinary and compelling reasons" were limited to the following four scenarios:

1. The defendant suffered from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A).

2. The defendant was at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and served the lesser of 10 years or 75% of his sentence. *Id.* § 1B1.13 cmt. n.1(B).

3. The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 cmt. n.1(C).

4. If there were "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

The changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act altered the procedure through which compassionate release could be sought, but did not alter the grounds for granting relief.

Defendant's motion asserts that his rheumatoid arthritis as well as a deteriorating medical issue related to his eyesight are the significant medical

9

conditions that increase his vulnerability to serious illness related to COVID-19. Mot. at 3. According to his motion and the attached documentation, defendant suffers from Panuevits in his right eye, blurry vision in his left eye, and swelling and pain in his wrists and hands due to his arthritis. *Id*. Defendant admits that both conditions are being regularly evaluated and treated with medications, including eye drops and steroids. *Id.*

The medical records included with the Motion reveal that both conditions have been regularly addressed by medical professionals both inside and outside of FCI Manchester beginning at least as early as 2017, and as recently as June 2020. Mot. at 5-123. In May 2020, defendant saw an eye specialist at a facility outside the prison in Lexington, Kentucky. Mot at 58-67. He was prescribed 40 mg of prednisone per day. *Id*. at 62. During a followup visit with the same specialist in June 2020, the physician recommended an additional course of prescriptions, and concluded "there is no tx of OD [right eye] at this point – vision loss is likely permanent. Need to protect OS [left eye]." *Id.* at 71. Sadly, this would indicate that the loss of vision in the right eye appears to be permanent. The records likewise indicate that he has been evaluated for his arthritis at an outside medical facility and has been prescribed medication for his pain. Mot. at 75-83.

In his request for relief to the warden of FCI Manchester, defendant presented these conditions as a basis for early release. Ex. A. The institution considered

them, together with his status as a former smoker, which is a recognized COVID-19 risk factor, and the request was denied. *Id*.

According to his motion, defendant previously contracted COVID-19, was sick and he has now recovered. Mot. at 4. While the government certainly recognizes the legitimate concern of inmates regarding the risk of re-infection, particularly when an underlying condition puts him at higher risk, that concern does not suffice when evaluated against the Sentencing Commission's policy statement set forth at Guideline § 1B1.13, and particularly the examples listed in Application Note 1. None of the provided examples support the notion that a generalized fear of a future illness, not even during a pandemic, constitutes an "extraordinary and compelling reason" warranting relief under § 3582(c)(1)(A)(i). Nor do any of the statutory sentencing factogrs set forth in 18 U.S.C. § 3553(a) provide any basis for concluding that concern about potential infection, without more, constitutes an extraordinary and compelligng reason for a substantial sentence reduction or release. As Judge Bucklo noted after observing the absence of COVID-19 cases at FCI Terre Haute in *United States v. Allegra*, Case No. 15 CR 243, Docket Item 232 (N.D. Ill. Apr. 13, 2020), "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13." (quoting *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Ca. Mar. 25, 2020)). BOP officials in charge of inmate health and safety are in a far better

11

position than the courts Court to evaluate the risks at issue and develop an effective strategy around those risks. *See Allegra*, Case No. 15 CR 243, Docket Item 232 (N.D. Ill. Apr. 13, 2020), at p.4.

Defendant does not appear to be at an especially high risk of serious illness were he to become re-infected with the virus. The BOP concluded that defendant's only known risk factor was his status as a former smoker. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 16, 2021). Indeed, defendant is 36 years old. While the CDC reports that rheumatoid arthritis is a condition that may bring about an immunocompromised state, the medical records defendant provided suggest that he is regularly obtaining medical treatment and prescriptions, including by outside providers. His eye condition, while tragic, appears to be permanent and does not appear to heighten his risk for serious illness related to COVID-19.

The relevant factors set forth in 18 U.S.C. § 3553(a), which under § 3582(c)(1)(A), must be considered in evaluating whether a defendant has presented extraordinary and compelling reasons warranting a sentence reduction, militate in favor of denying the motion for compassionate release.

Specifically, the nature and circumstances of the offense, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes all militate against

12

release in this case. Defendant committed and participated in multiple armed robberies over an extended period of time that posed substantial danger to public safety. With his knowledge, participation and assistance, he and his co-defendants displayed guns in an effort to make employees hand over cash and goods during eight armed robberies committed over a sustained period. This conduct is serious, and the Court found that a substantial sentence of 194 months was warranted.

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that this Court deny defendant's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

          Respectfully submitted,
          JOHN R. LAUSCH, Jr.
          United States Attorney

By: *s/ Lindsay C. Jenkins*
     LINDSAY C. JENKINS
     Assistant United States Attorney

February 18, 2021

A copy of this filing was sent via US Mail to:    Tyree Craig
    BOP # 47105-424
    FCI Manchester
    805 Fox Hollow Road
    Manchester, KY   40962